Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
Johnathon Fayeghi, Esq.
Nevada Bar No,: 12736
SKLAR WILLIAMS PLLC
410 S. Rampart Blvd., Suite 350
Las Vegas, NV 89145
Telephone:    (702) 360-6000
Facsimile:    (702) 360-0000
Email:  shackett@sklar-law.com
        jfayeghji@sklar-law.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NADER CHEETANY, an individual; EVA GARCIA-MENDOZA, an individual; MARTYN JAMES RAVENHILL, an individual; ESAD MORINA, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> PETER M. BERGSTROM, an individual; DESTINATION ONLINE L.L.C., a Nevada limited liability company; OURID INC., a Nevada corporation; DOES 1-10, inclusive; and ROE ENTITIES 1-10, inclusive, <br><br> Defendants. | Case No: <br><br> **COMPLAINT** |

Plaintiffs NADER CHEETANY ("Cheetany"), EVA GARCIA-MENDOZA ("Garcia"), MARTYN JAMES RAVENHILL ("Ravenhill"), and ESAD MORINA ("Morina") (collectively, the "Plaintiffs") as and for their Complaint against Defendants PETER M. BERGSTROM ("Bergstrom"), DESTINATION ONLINE L.L.C. ("Destination Online") and OURID INC. ("OurID"), hereby allege the following:

## INTRODUCTION

1.      This case arises out of Defendants' fraudulent sale of securities to Plaintiffs in exchange for approximately $1,480,000.00.  Defendants engaged in a complex scheme to offer and sell membership interests in various businesses to Plaintiffs, including providing the Plaintiffs

1

with fraudulent business projections and prospectuses, and making blatant misrepresentations about ongoing operations.  Plaintiffs have now learned that Defendants' representations were knowingly false, in violation of the Securities Exchange Act of 1934, among other applicable law, and Plaintiffs file this suit seeking redress for the Defendants' fraud.

## **PARTIES**

2.      Plaintiff Cheetany is, and at all times relevant herein was, a resident of the State of Nevada, County of Clark.

3.      Plaintiff Garcia is, and at all times relevant herein was, a resident of the State of Nevada, County of Clark.

4.      Plaintiff Ravenhill is, and at all times relevant herein was, a resident of the State of Nevada, County of Clark.

5.      Plaintiff Morina is, and at all times relevant herein was, a resident of the State of Nevada, County of Clark.

6.      Plaintiffs are informed and believe that Defendant Destination Online is, and at all times relevant herein was, a Nevada limited liability company with its principal place of business in Clark County, Nevada.  Plaintiffs are also informed and believe that Bergstrom is, and was at all times relevant herein, the sole manager of Destination Online.

7.      Plaintiffs are informed and believe that Defendant OurID is, and at all times relevant herein was, a Nevada corporation with its principal place of business in Clark County, Nevada, and that Bergstrom was and is the President of OurID.

8.      Plaintiffs are informed and believe that Defendant Bergstrom is a citizen of Sweden currently residing in the Republic of Moldova.  Upon information and belief, Bergstrom was granted an investor visa to the United States in April 2018 and his visa has since expired.  From April 2018 through December 2019, Bergstrom resided in Clark County, Nevada.  At all times relevant herein, Bergstrom conducted business in Clark County, Nevada.  Upon information and belief, Bergstrom has not returned to the United States since December 2019.

9.     Plaintiffs are informed and believe that Defendants Bergstrom, Destination Online and OurID were and are the alter egos of one another, as further described herein.

10.    The true names and capacities, whether corporate, individual, or otherwise, of Defendant Does 1 through 10 and Roe Entities 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue such Defendants by fictitious names.  Plaintiffs are informed and believe and thereon allege that each Defendant designated as a Doe and Roe Entity is legally responsible in some manner or means for the damages to the Plaintiffs, as herein alleged, either through their contractual duty, fiduciary duty, conduct or through the conduct of their agents, servants, employees, or insurers, or due to their breach of contract, fraudulent inducement, securities fraud, or otherwise causing injury and damages to the Plaintiffs.  Plaintiffs will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendant Does 1 through 10 and Roe Entities 1 through 10, inclusive, when the same have been ascertained by the Plaintiffs, together with the appropriate charging allegations, and to join said Defendants in this action.

## JURISDICTION AND VENUE

11.    This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934, as amended, and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10B-5.  This Court has exclusive jurisdiction over this action under 15 U.S.C. § 78aa, and jurisdiction is also proper under 28 U.S.C. §§ 1331 and 1332(a).  This Court has supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367.

12.    The Court has personal jurisdiction over the Defendants, because Defendant Bergstrom purposefully availed himself of the benefits and protections of this forum, by offering the purported investments at issue to Plaintiffs in this forum, and by initiating and conducting numerous in-person meetings and conducting numerous phone calls with Plaintiffs in Clark County, Nevada.  Further, Defendants Destination Online and OurID are organized and created under the laws of the State of Nevada and their principal place of business is within Clark County, Nevada; and many of the acts complained of below occurred in this District.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) or, alternatively, under 28 U.S.C. § 1391(b)(3).

## GENERAL ALLEGATIONS

**A.     Bergstrom Persuades the Plaintiffs to Invest in Destination Online.**

14.     Bergstrom formed Destination Online, a Nevada limited liability company, on or about June 21, 2017.  At the time of its formation, Bergstrom was the sole manager and member of Destination Online.

15.     In or about early 2018, Bergstrom solicited investments from numerous individuals, including Cheetany, Garcia and Ravenhill, for what he promoted as an identity protection business run by Destination Online.  Bergstrom represented to Cheetany, Garcia and Ravenhill that he had significant experience in the identity theft and monitoring industries and that Destination Online had been organized to develop, market and sell effective and affordable identity protection services to end users in the United States and around the world.

16.     In February 2018, Bergstrom represented to Cheetany and Garcia that in 2014, he launched EyeonID.com, a Swedish-based company created to address the problem of identity theft by creating an affordable personal information monitoring service for the European consumer. Bergstrom claimed that he developed EyeonID.com from an idea to a publicly traded company with over 2 million users and a valuation of $40 million in just two years.  Bergstrom further alleged that the EyeonID.com product could only be sold in Sweden due to certain laws which required the company to have physical presence in the country from which it collects personal identifying information.  Bergstrom further represented that his intent was to bring the successful EyeonID.com concept he created in Sweden to the United States through Destination Online.

17.     Plaintiffs subsequently discovered that Bergstrom grossly misrepresented and/or failed to disclose material facts regarding EyeonID.com.  Specifically: (i) Bergstrom grossly overstated the success of EyeonID.com – the company has not had any revenue since 2014; (ii) Bergstrom failed to disclose that he was removed from his managerial position at EyeonID.com due to his excessive use of company funds for personal expenses; and (iii) Bergstrom failed to disclose that he did not have the exclusive right to use the EyeonID.com product in connection with Destination Online.

18.   In February 2018, Bergstrom provided Cheetany, Garcia and Ravenhill with a document titled "Destination Online Investment Memorandum" (hereinafter referred to as the "DO Investment Memorandum"), in an attempt to convince them to invest in the U.S.-based Destination Online.

19.   In the DO Investment Memorandum, Bergstrom falsely represented that Destination Online only needed a total investment of $1,000,000 to complete all software development, initiate the product launch, and finance operations and marketing activities for the rest of 2018.

20.   Through the DO Investment Memorandum, Bergstrom made additional misrepresentations to induce Cheetany, Garcia and Ravenhill to invest in Destination Online, including, but not limited to the following claims:

a.   The Destination Online technology protects a variety of personal data, including, but not limited to: credit card numbers; social security numbers; driver's license and identification numbers; passport numbers; and login credentials, including social media accounts;

b.   Bergstrom invested three hundred thousand dollars ($300,000) of his own money into Destination Online as the initial startup capital, which was used to finance all of the development and testing activities of the pre-Beta version of the product;

c.   As of the date of the DO Investment Memorandum, the company had completed the development of the data collection process and development of application programming interfaces for the data providers;

d.   As of the date of the DO Investment Memorandum, the company had commenced the development of: (i) the application administration panel; (ii) the application programming interfaces for the mobile application; and (iii) the mobile application for the IOS and Android platforms;

e.   The majority of the back-end development work had been completed and that the remaining development work was on-track and scheduled to be

1            completed in August 2018;

2        f.      That the product would be launched and begin generating sales in October

3            2018;

4        g.      That the company's valuation as of February 2018 was $5,000,000, with

5            2,500 shares outstanding;

6        h.      The company's financial projection for 2018 was a net profit after taxes of

7            $421,690;

8        i.      The company's financial projection for 2019 was a net profit after taxes of

9            $34,001,334;

10       j.      The investment capital would be used to finance:  (i) the completion of

11           software development; (ii) sales and marketing efforts; (iii) third-party data

12           acquisition; (iv) legal expenses; and (v) personnel and office expansion; and

13       k.      That no further capital investment would be required as the company would

14           leverage its extensive list of personal contacts to close at least two large

15           enterprise accounts and become profitable in the fourth quarter of 2018.

16     21.     Relying on the misrepresentations described above, Cheetany, Garcia and

17  Ravenhill agreed to acquire and, to their knowledge acquired, units of membership interest in

18  Destination Online as follows:

19        a.      On or about February 5, 2018, Cheetany executed an adherence agreement

20           (the "Cheetany Adherence Agreement") in Clark County, Nevada, whereby

21           Cheetany agreed to invest $30,000 in exchange for 75 shares, or a 3%

22           membership interest, in Destination Online.  Under the Cheetany

23           Adherence Agreement, Cheetany also agreed to be bound by Destination

24           Online's purported shareholder agreement (the "DO Shareholder

25           Agreement"), which Bergstrom had furnished to Cheetany.  At the time he

26           executed the Cheetany Adherence Agreement, Cheetany transferred

27           $30,000.00 to Destination Online's bank account in Clark County, Nevada,

28           per Bergstrom's instruction.

b.    On or about April 20, 2018, Garcia executed an adherence agreement (the "Garcia Adherence Agreement") in Clark County, Nevada, whereby Garcia agreed to invest $100,000 in exchange for 250 shares, or a 10% membership interest, in Destination Online. Under the Garcia Adherence Agreement, Garcia also agreed to be bound by the DO Shareholder Agreement. On May 16, 2018, Garcia issued a check in the amount of $100,000 to Destination Online, and furnished the check directly to Bergstrom at her law office in Las Vegas, Nevada.

c.    On or about June 5, 2018, Ravenhill executed an adherence agreement (the "Ravenhill Adherence Agreement") in Clark County, Nevada, whereby Ravenhill agreed to invest $700,000 in exchange for 350 shares, or a 14% membership interest, in Destination Online. Under the Ravenhill Adherence Agreement, Ravenhill also agreed to be bound by the DO Shareholder Agreement. On June 8, 2018, Ravenhill transferred $700,000 to Destination Online's bank account in Clark County, Nevada, per Bergstrom's instruction.

22.    While Garcia and Ravenhill were aware of each other's investments in Destination Online, Cheetany invested separately from them. Garcia and Ravenhill only became aware of Cheetany's purported investment in the company in December 2019.

23.    Unbeknownst to Cheetany, Garcia and Ravenhill at the time of their initial investments, which were made based upon Bergstrom's numerous misrepresentations set forth above, Bergstrom made material changes to the DO Investment Memorandum after Cheetany, Garcia and Ravenhill's initial investments. Specifically, the new version of the DO Investment Memorandum sought to raise total capital of $1,500,000 (rather than the $1,000,000 amount represented by Bergstrom in the original DO Investment Memorandum), allegedly in order to complete software development, initiate production launch, and finance operations and marketing activities for the rest of 2018. Moreover, Bergstrom drastically changed the financial projection amounts represented in the original DO Investment Memorandum, as follows: the financial

projection for 2018 was changed from a net profit after taxes of $421,690 to a net loss of $460,000; and the financial projection for 2019 was changed from a net profit after taxes of $34,001,334 to a net profit after taxes of $13,100,000.   Bergstrom's material changes to the DO Investment Memorandum were never disclosed to Cheetany, Garcia and Ravenhill.

24.     On or about July 18, 2018, Bergstrom sent Garcia and Ravenhill an interim update on Destination Online's progress and operations, in which Bergstrom made the following additional misrepresentations to induce Garcia and Ravenhill to invest additional monies in Destination Online:

        a.     The software development teams in India and Ukraine are on time and doing a great job working on the product;

        b.     On the commercial side, we are having discussions with both Emirates Airlines and Microsoft;

        c.     A hard launch date is set for October 6, with a launch party in Las Vegas and simultaneous release of the "OurID" app in both Apple iOS and Google Play.

25.     In late 2018, Garcia, Ravenhill and Bergstrom met in person in Las Vegas to discuss the status of Destination Online.   At their meeting, Bergstrom represented the following:

        a.     Product development was in the final stages and near completion;

        b.     The new target date for launch of the product is February 2019;

        c.     The company was seeking $800,000 in additional investment capital, which would be the last investment capital required.

26.     In reliance upon Bergstrom's misrepresentations in the July 18, 2018 interim update and at the in-person meeting in late 2018, Garcia and Ravenhill agreed to invest additional capital in Destination Online as follows:

        a.     Garcia made an additional investment in the amount of $100,000, in exchange for 125 shares of membership interest in Destination Online, resulting in Garcia's ownership of 375 shares and a 15% membership interest;

        b.     Ravenhill made an additional investment in the amount of $300,000, in

exchange for 150 shares of membership interest in Destination Online, resulting in Ravenhill's ownership of 500 shares and a 20% membership interest.

27.     On or about February 20, 2019, Bergstrom formed OurID, a Nevada corporation. At the time, Bergstrom advised Garcia and Ravenhill that he formed OurID, due to the confusion caused by the name of Destination Online, because the nature of the business was identity protection and not travel.  Bergstrom advised that Destination Online would assign all of its technology and intellectual property rights to OurID, and that Garcia's and Ravenhill's ownership interests in Destination Online would also be transferred to OurID.  However, Bergstrom never transferred Garcia's and Ravenhill's ownership interests in Destination Online to OurID.

28.     The February 2019 launch date for the Destination Online product set by Bergstrom came and went, but the product was not launched.  Garcia and Ravenhill became concerned and made numerous requests to Bergstrom for financial accountings demonstrating how their investment funds were being spent.  Despite their numerous requests, Bergstrom failed to provide the requested financial accountings.

29.     In mid-April 2019, Bergstrom advised Garcia and Ravenhill, at an in-person meeting at Bergstrom's office in Clark County, Nevada, that the product had been launched and was accessible in both the Apple iOS and Google Play.  However, this was not true.  On April 26, 2019, Bergstrom admitted that the product had not yet launched, and advised Garcia and Ravenhill that the product still had problems that needed to be fixed.

30.     After numerous meetings and after providing numerous excuses as to why the product had not yet been launched, on or about April 29, 2019, at Garcia's demand, Bergstrom provided Garcia and Ravenhill with a copy of Destination Online's bank statements from January 2019 to April 2019.  To their shock, the bank statements showed that the company was out of money, despite Garcia's and Ravenhill's collective $1,200,000 investments (in addition to Cheetany's investment of $30,000).  Moreover, the company's bank statements demonstrated that Bergstrom used hundreds of thousands of dollars of the amounts invested by Cheetany, Garcia and Ravenhill for personal expenses and other inappropriate purposes.  Based on this information,

Garcia and Ravenhill advised Bergstrom that they wanted to be bought out of the company as soon as possible. Bergstrom, Garcia and Ravenhill agreed to meet in person the following week to go over the complete financials of the company and to discuss the terms of a buy-out.

31.     On May 3, 2019, Garcia, Ravenhill and Bergstrom held an in-person meeting in Las Vegas. However, Bergstrom failed to bring any financial records of the company as previously promised. At the meeting, Bergstrom advised that he was speaking with investment bankers and that he would soon have the funds to purchase Garcia's and Ravenhill's shares in Destination Online. At the May 3, 2019 meeting, Bergstrom agreed to purchase all of Garcia and Ravenhill's shares in Destination Online, at a 10% premium, to be paid within ninety days.

32.     Despite Bergstrom's agreement to purchase Garcia's and Ravenhill's shares, Bergstrom failed to make the required payments when due. Moreover, after the payments became due, Bergstrom refused to provide a complete financial accounting to Garcia and Ravenhill and then stopped communicating with Garcia and Ravenhill altogether for many months thereafter.

33.     Through subsequent investigation, Cheetany, Garcia and Ravenhill discovered that Bergstrom had made false representations and/or material omissions of fact to induce their initial investment in Destination Online, and that the true facts were:

      a.     Bergstrom grossly overstated the success of EyeonID.com to Cheetany, Garcia and Ravenhill as the Swedish company had not had any revenues since 2014 and the value of its stock on the Swedish Stock Exchange had become practically worthless;

      b.     Bergstrom failed to disclose that he was removed from his managerial position at EyeonID.com due in part to his excessive use of company funds for personal expenses, including many trips he made to Las Vegas, Nevada;

      c.     Bergstrom did not invest three hundred thousand dollars ($300,000) of his own money into Destination Online as represented by Bergstrom in the DO Investment Memorandum;

/ / /

/ / /

d.    The Destination Online product was intended to provide identity monitoring services, not identity protection services, as represented by Bergstrom in the DO Investment Memorandum;

e.    Destination Online had not completed the development of the data collection process as of February 2018 as represented by Bergstrom in the DO Investment Memorandum;

f.    Destination Online had not completed the development of application programming interfaces for the data providers as of February 2018 as represented by Bergstrom in the DO Investment Memorandum;

g.    Destination Online had not commenced the development of the application administration panel as of February 2018 as represented by Bergstrom in the DO Investment Memorandum;

h.    Destination Online had not commenced the development of the application programming interfaces for the mobile application as of February 2018 as represented by Bergstrom in the DO Investment Memorandum;

i.    Destination Online had not commenced the development of the mobile application for the IOS and Android platforms as of February 2018 as represented by Bergstrom in the DO Investment Memorandum;

j.    Destination Online had not completed a majority of the back-end development work as of February 2018 as represented by Bergstrom in the DO Investment Memorandum;

k.    Plaintiffs' investment monies were not used to finance the completion of software development, sales and marketing efforts, third-party data acquisition, legal expenses or personnel and office expansion as represented by Bergstrom in the DO Investment Memorandum. Instead, Bergstrom used Plaintiffs' investment monies to pay for personal expenses and other inappropriate purposes;

11

l.   The financial projections contained in the DO Investment Memorandum were grossly inflated;

m.   Contrary to Bergstrom's representations in the DO Investment Memorandum, the Destination Online product was far from completion as of February 2018;

n.   Contrary to Bergstrom's representations in the DO Investment Memorandum, the Destination Online product could not be launched by October 2018 nor could the company begin to generate sales in October 2018; and

o.   Contrary to Bergstrom's representations in the DO Investment Memorandum, Bergstrom knew that the company would require further capital investment beyond $1,000,000.

34.   Garcia and Ravenhill also discovered that Bergstrom had made false representations to induce their additional investments in Destination Online, and that the true facts were:

a.   The software development teams in India and Ukraine were not on schedule as represented by Bergstrom in the July 18, 2018 interim update.  In fact, upon information and belief, Bergstrom never hired any software development teams in India and Ukraine;

b.   The company never had any discussions with Emirates Airlines or Microsoft as represented by Bergstrom in the July 18, 2018 interim update;

c.   Contrary to Bergstrom's representations in the July 18, 2018 interim update, Bergstrom knew that the Destination Online product was far from completion in July 2018 and that the company would not be able to launch the product on October 6, 2018;

d.   Product development was not in the final stages or near completion in late 2018 as represented by Bergstrom during his in-person meeting with Garcia and Ravenhill; and

e.   Contrary to Bergstrom's representations during the late 2018 in person meeting, Bergstrom knew that the Destination Online product was far from completion and that the company would not be able to launch the product in February 2019.

35.   Garcia and Ravenhill also discovered that, contrary to his representations, Bergstrom never transferred their membership interest in Destination Online to OurID.   In addition, Bergstrom never transferred any of Destination Online's intellectual property or technology to OurID.

**B.   Bergstrom Persuades Plaintiff Morina to Invest in OurID.**

36.   In September 2019, Bergstrom approached Morina to become an investor in OurID.

37.   In late September 2019, Bergstrom made the same false representations to Morina as he did to Cheetany, Garcia and Ravenhill regarding his experience in the identity theft and monitoring industries, and that Bergstrom formed OurID to develop, market and sell effective and affordable identity protection services to end users in the United States.  Significantly, Bergstrom failed to inform Morina about Destination Online, or Cheetany's, Garcia's and Ravenhill's prior investments in Destination Online.

38.   In or about late September 2019, Bergstrom provided Morina with a document entitled "OurID Investment Memorandum," in an attempt to persuade Morina to invest in OurID.

39.   Through the OurID Investment Memorandum, Bergstrom made significant misrepresentations to induce Morina to invest in OurID, including, but not limited to the following:

a.   The OurID technology protects a variety of personal data, including, but not limited to: credit card numbers; social security numbers; driver's license and identification numbers; passport numbers; and login credentials, including social media accounts;

b.   Bergstrom invested three hundred thousand dollars ($300,000) of his own money into OurID as the initial startup capital;

c.   As of the date of the OurID Investment Memorandum, the company had completed the development of the data collection process and development of application programming interfaces for the data providers;

13

d.  As of the date of the OurID Investment Memorandum, the majority of the back-end development work has been completed with the OurID platform, successfully ingesting and processing data from external data sources;

e.  As of the date of the OurID Investment Memorandum, the company had completed a comprehensive legal analysis, including compliance with U.S. and international data privacy laws and production of all required legal documents;

f.  That OurID had been approved to launch its mobile app on both Google Play and Apple iOS, as of March 28, 2019;

g.  That the company had procured all applicable insurance;

h.  That the company's financial projection for 2019 was a net loss of $965,684;

i.  That the company's financial projection for 2020 was a net profit after taxes of $11,243,894;

j.  That the company's financial projection for 2021 was a net profit after taxes of $46,091,805; and

k.  The investment capital would be used to finance:  (i) the completion of software development; (ii) sales and marketing efforts; (iii) third-party data acquisition; (iv) legal expenses; and (v) personnel and office expansion.

40.  Moreover, to further induce Morina to invest in OurID, Bergstrom represented to Morina that OurID would employ Morina as its vice president of client relationships, and that it would pay Morina a base salary of $140,000 per year.

41.  In reliance upon all the misrepresentations described above, Morina agreed to invest in OurID as follows:

a.  On or about October 3, 2019, Morina executed an adherence agreement (the "Morina Adherence Agreement") in Clark County, Nevada, whereby Morina agreed to invest $200,000 in exchange for 1,000 shares, or a 10% ownership interest, in OurID.  Under the Morina Adherence Agreement,

14

Morina also agreed to be bound by OurID's shareholder agreement (the "OurID Shareholder Agreement").

b.   On or about October 4, 2019, Morina and Bergstrom, as the self-appointed President and CEO of OurID, executed an employment agreement, under which OurID agreed to employ Morina as the vice president of client relationships. The agreement provided that OurID would pay Morina a base salary of $140,000 per year, beginning on November 1, 2019.

c.   On October 7, 2019, Morina issued a check in the amount of $50,000 to Bergstrom, as partial payment for his investment in OurID. On November 15, 2019, Morina transferred $100,000 to OurID's bank account in Clark County, Nevada. On December 17, 2019, Morina issued a check in the amount of $50,000 to OURID, as the final payment for his investment in OurID.

42.   Despite his significant investment in OurID, OurID's execution of Morina's employment agreement and Morina's significant amount of work for the company, OurID failed to pay Morina his base salary or to provide Morina with the benefits set forth in the employment agreement. Furthermore, Bergstrom refused to provide Morina with any financial accounting of the company or update Morina regarding the status of the company's progress.

**C.   Plaintiffs Discover Bergstrom's Fraud.**

43.   Through subsequent investigation, Plaintiffs are informed and believe that in the process of soliciting Plaintiffs' investment in Destination Online and OurID, Bergstrom violated numerous securities laws, engaged in fraudulent and deceptive activities, and misappropriated Plaintiffs' investment monies for personal use. Plaintiffs are informed and believe that Bergstrom engaged in, *inter alia*, each of the following improper acts and omissions:

a.   Bergstrom solicited and received Plaintiffs' investment money without providing appropriate disclosures of material facts, either orally or in writing;

b.      Bergstrom made false representations to induce Plaintiffs to invest in Destination Online and OurID,

c.      Bergstrom wrongfully utilized purported offering documents, including the DO Investment Memorandum and OurID Investment Memorandum, which contained false representations and were substantially changed on multiple occasions without notifying Plaintiffs;

d.      Bergstrom misrepresented to Garcia and Ravenhill that he would transfer their membership interests in Destination Online to OurID;

e.      Bergstrom wrongfully acted to dilute Cheetany's, Garcia's and Ravenhill's interests by increasing the number of outstanding shares in OurID, significantly increasing his ownership interest in OurID, and completely changing the nature of the Plaintiffs' investments;

f.      Bergstrom misappropriated Plaintiffs' investment monies for his own purposes, including without limitation, paying himself exorbitant compensation and paying for his personal debts and expenses; and

g.      Bergstrom fraudulently induced Morina to invest by executing Morina's employment agreement with OurID, despite the fact that OurID and Bergstrom had no intention of complying with the terms of the employment agreement.

44.      On or about May 15, 2020, Plaintiffs sent correspondence to Bergstrom demanding that he produce detailed financial statements and bank statements of Destination Online and OurID, detailing how the companies had used Plaintiffs' investment monies. The May 15, 2020 correspondence also demanded that Destination Online and OurID hold an annual meeting of its members and shareholders, due to the fact that Bergstrom, as manager of Destination Online and president of OurID, had never held an annual meeting of members/shareholders for either company since their formations.

/ / /

/ / /

45.     As of the date of this Complaint, Bergstrom has failed and refused to provide Plaintiffs with any financial records of Destination Online or OurID, or to call a meeting for the members and/or shareholders of the companies.

46.     Moreover, rather than complying with Plaintiffs' May 15, 2020 correspondence, Bergstrom began making threats of severe bodily injury and/or death to Ravenhill.  Specifically, on or about May 19, 2020, Bergstrom sent an email to Plaintiffs wherein Bergstrom stated the following in pertinent part, "But sorry Martyn, I will be coming for you.  And I'm a blood hound, I never miss my mark."   Ravenhill was gravely concerned with Bergstrom's threat and immediately submitted a complaint with the Las Vegas Metropolitan Police Department. Recently, after months of no communication, Bergstrom sent another threatening communication to Ravenhill via text message.  Ravenhill is in the process of reporting Bergstrom's most recent threat to the Las Vegas Metropolitan Police Department.

## FIRST CLAIM FOR RELIEF
### (Alter Ego Liability)

47.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 46, inclusive, and incorporate the same as if fully set forth herein.

48.     Plaintiffs are informed and believe that there now exists, and at all times relevant herein has existed, a unity of interest and ownership among Bergstrom, Destination Online and OurID such that any individuality or separateness of these Defendants has ceased.  Bergstrom, Destination Online and OurID are the alter egos of each other, in that:

a.  Destination Online and OurID are, and at all times relevant herein have been, mere shells, instrumentalities and conduits through which Bergstrom has carried on his fraudulent conduct;

b.  Destination Online and OurID are, and at all times relevant herein were, so inadequately capitalized that, compared with the business to be conducted and the risks of loss attendant thereto, their capitalization was illusory;

17

c.  Bergstrom has exercised, and continues to exercise, full control and dominance over Destination Online and OurID;

d.  Plaintiffs are informed and believe that Bergstrom engages in the practice of forming multiple entities, making multiple name changes, and transferring assets between and among these companies as a method of hiding assets and shielding himself from the wrongdoing that he controls and benefits from;

e.  Plaintiffs are informed and believe that Bergstrom disregards the corporate identity of Destination Online and OurID as separate entities and treats them as extensions of himself;

f.  Plaintiffs are informed and believe that Bergstrom, Destination Online and OurID have so intermingled their financial affairs, and there exists among them such a unity of interest and ownership, that any individuality and separateness should be disregarded, and Bergstrom, Destination Online and OurID should be considered the alter egos of each other.

49.  Based on the foregoing, Plaintiffs allege that adherence to the fiction of the separate existence of Bergstrom, Destination Online and OurID as individual and entities distinct and separate from each other would permit abuse of the corporate privilege and would sanction a fraud.

## SECOND CLAIM FOR RELIEF
**(Securities Fraud – Violations of the Securities and Exchange Act of 1934, Rule 10(b) and S.E.C. Rule 10b-5 - against all Defendants)**

50.  Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 49, inclusive, and incorporate the same as if fully set forth herein.

51.  Plaintiffs are informed and believe that, in connection with the purchase or sale of securities, Defendants, by use of the means and instrumentalities of interstate commerce, including without limitation, mail, wire, telephone, electronic mail and the internet, violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by, *inter alia*: (a) employing each of the

above-referenced devices, schemes and artifices to defraud; (b) making each of the above-referenced untrue statements of material fact and/or failing to make each of the above-referenced disclosures of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in the above-referenced acts, practices and courses of business which operated as a fraud or deceit upon Plaintiffs, as set forth above.

52.     Plaintiffs are informed and believe that Defendants made each of the false representations, wrongful omissions and concealments, and otherwise engaged in the tortious acts set forth above, with scienter in that, at the time such were made, Defendants knew each of them to be false, material and wrongful, and/or acted with reckless disregard in making such misrepresentations, wrongful omissions and concealments, and tortious acts, but at all times concealed and suppressed the falsity, materiality and wrongfulness thereof from Plaintiffs with the intent to defraud, deceive and injure Plaintiffs.

53.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, Defendants had actual knowledge that the forward-looking statement was materially false or misleading.

54.     At the times when Defendants made each of the false representations, wrongful omissions and concealments, and otherwise engaged in the tortious acts set forth above, Plaintiffs were unaware of the falsity, materiality and wrongfulness thereof and, believing such misrepresentations to be true, and in reliance thereon, among other things, Plaintiffs purchased the

19

above-referenced securities and interests from Defendants.

55.     Plaintiffs are informed and believe that had Plaintiffs known the true facts, they would not have invested in or purchased the subject securities and interests offered and sold by Defendants.

56.     As a direct and proximate result of the above wrongful conduct of Defendants, Plaintiffs have been damaged in amounts, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon.

57.     As a direct and proximate result of the above wrongful conduct of Defendants, Plaintiffs are entitled to rescission of Plaintiffs' investments in Destination Online and OurID, including the Cheetany Adherence Agreement, Garcia Adherence Agreement, Ravenhill Adherence Agreement and Morina Adherence Agreement, and an order directing that Plaintiffs recover from Defendants, jointly and severally, the principal amount of Plaintiffs' investments, plus pre-judgment interest at the statutory rate, plus Plaintiffs' taxable costs and attorneys' fees.

58.     In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputations and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## THIRD CLAIM FOR RELIEF
### (Securities Fraud as Controlling Person– Violations of § 20(a) of the Securities and Exchange Act of 1934 - against all Defendants)

59.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 58, inclusive, and incorporate the same as if fully set forth herein.

60.     Plaintiffs are informed and believe that each of the Defendants acted as controlling persons within the meaning of § 20(a) of the Exchange Act and that, by reason of their respective positions as owners, agents or otherwise, they directly or indirectly had power and authority to

control, and did control in bad faith, each of the other Defendants in making each of the false representations, wrongful omissions and concealments, and other tortious acts set forth above, and are, therefore, jointly and severally liable herein to the same extent as the other Defendants so controlled.

61.     As a direct and proximate result of the above wrongful conduct of Defendants, Plaintiffs have been damaged in amounts, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon.

62.     As a direct and proximate result of the above wrongful conduct of Defendants, Plaintiffs are entitled to rescission of Plaintiffs' investments in Destination Online and OurID, including the Cheetany Adherence Agreement, Garcia Adherence Agreement, Ravenhill Adherence Agreement and Morina Adherence Agreement, and an order directing that Plaintiffs recover from Defendants, jointly and severally, the principal amount of Plaintiffs' investments, plus pre-judgment interest at the statutory rate, plus Plaintiffs' taxable costs and attorneys' fees.

63.     In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputations and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## FOURTH CLAIM FOR RELIEF
**(Securities Fraud Pursuant to NRS Chapter 90 - against all Defendants)**

64.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 63, inclusive, and incorporate the same as if fully set forth herein.

65.     The investments made by Plaintiffs in Destination Online and OurID, as described herein are securities under Chapter 90 of the Nevada Revised Statutes.

66.     By promoting and soliciting investments from Plaintiffs, Defendants offered to sell securities to Plaintiffs.

67.     By accepting Plaintiffs' investments in Destination Online and OurID, Defendants sold securities to Plaintiffs.

68.     In offering to sell and in fact selling securities to Plaintiffs, Defendants, by and through their conduct alleged above and herein, employed a scheme to defraud Plaintiffs.  The scheme was designed to induce Plaintiffs to invest $1,480,000 into Destination Online and OurID, by and through Defendants' misrepresentations and omissions of material facts regarding the investments.

69.     In furthering the scheme to defraud Plaintiffs, Defendants made numerous false statements of material fact and omissions of material fact regarding the investments and the circumstances surrounding the investments.

70.     The Defendants' scheme operated as a fraud and deceit upon the Plaintiffs.

71.     The Defendants' scheme was in violation of NRS 90.570 and, as a consequence, the Defendants are liable to the Plaintiffs for securities fraud including, without limitation, any and all damages permitted pursuant to NRS 90.660 and in an amount, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon, as well as Plaintiff's reasonable costs and attorneys' fees incurred in connection with this action.

72.     In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputations and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## FIFTH CLAIM FOR RELIEF
### (Fraud - against all Defendants)

73.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 72, inclusive, and incorporate the same as if fully set forth herein.

74.    In connection with Defendants' solicitation of investments from Plaintiffs as described in more detail above, Defendants concocted and perpetrated a scheme to falsely misrepresent, conceal and/or omit material facts regarding the potential investment to Destination Online and OurID.

75.    By their actions, as alleged with specificity herein, Defendants knowingly and intentionally made false and misleading representations to Plaintiffs and knowingly and intentionally concealed or suppressed material facts from Plaintiffs.

76.    Defendants knew such representations were false and misleading or did not have a sufficient basis or information to make such false representations to Plaintiffs.

77.    Defendants made such false and misleading representations or omissions for the purpose of inducing Plaintiffs to invest monies into Destination Online and OurID, to "lull" the Plaintiffs into inaction by representing that the business plan was moving forward as originally proposed, and to otherwise refrain from taking any action against Defendants to respond in a timely fashion to the events and circumstances that Defendants' actions caused.

78.    Plaintiffs justifiably relied upon the false and misleading misrepresentations made by Defendants by investing monies and by not taking any action to respond, oppose, object, or otherwise challenge the wrongful conduct that Defendants were engaged in, all of which was either misrepresented or concealed from Plaintiffs.  Specifically

79.    Plaintiffs were unaware of the true facts and circumstances and Plaintiffs would have acted differently had they been apprised of the same.

80.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have been damaged in amounts, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon.

81.    As a direct and proximate result of the above wrongful conduct of Defendants, Plaintiffs are entitled to rescission of Plaintiffs' investments in Destination Online and OurID, including the Cheetany Adherence Agreement, Garcia Adherence Agreement, Ravenhill Adherence Agreement and Morina Adherence Agreement, and an order directing that Plaintiffs

recover from Defendants, jointly and severally, the principal amount of Plaintiffs' investments, plus pre-judgment interest at the statutory rate, plus Plaintiffs' taxable costs and attorneys' fees.

82.     In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputations and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## SIXTH CLAIM FOR RELIEF
### (Deceptive Trade Practices/Consumer Fraud – against all Defendants)

83.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 82, inclusive, and incorporate the same as if fully set forth herein.

84.     Defendants, by and through their conduct and actions complained of herein, advertised or offered an opportunity for investment.

85.     In doing so, Defendants knowingly engaged in predatory and statutory consumer fraud and/or deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act by engaging in the following prohibited conduct:

    a.   Representing that the investment was guaranteed, secured or protected in a manner which Defendants knew or had reason to know was false or misleading;

    b.   Representing that the investment would earn a rate of return which Defendants knew or had reason to know was false or misleading;

    c.   Making untrue statements of material fact and omitting to disclose material facts which were necessary to make another statement, considering the circumstances under which Defendants' representations and omissions were made, not misleading; and

    d.   Failing to maintain adequate records and failing to provide information to Plaintiffs after multiple reasonable requests for information concerning their investment.

86.     As a result of Defendants' advertisements or offers for investment, and based upon the material misrepresentations or omissions in connection therewith, Plaintiffs invested $1,480,000 in Destination Online and OurID.

87.     As a result of the foregoing, Defendants engaged in deceptive trade practices in violation of NRS 41.600(2)(e) and NRS 598.092(5)(a-f).

88.     As a direct and proximate result of the Defendants' violations, Plaintiffs have been damaged in amounts, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon.

89.     Pursuant to NRS 598.0999(3), Plaintiffs are entitled to statutory damages on all profits derived from Defendants knowing and willful engagement in the deceptive trade practice and treble damages on all damages suffered by reason of the deceptive trade practice.

90.     Pursuant to NRS 41.600(3)(c), Plaintiffs are further entitled to statutory attorney fees and costs.

91.     In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputations and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## SEVENTH CLAIM FOR RELIEF
### (Conversion Against all Defendants)

92.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 91, inclusive, and incorporate the same as if fully set forth herein.

93.     As established by the allegations of this Complaint, Defendants, through their wrongful conduct have converted, for their own personal use and benefit, the funds and assets rightfully belonging to the Plaintiffs.

94. Defendants' use of the Plaintiffs' funds and assets has deprived the Plaintiffs of their lawful enjoyment and use of such property. In good conscience and equity, Defendants should not be permitted to retain those funds and assets that rightfully belong to Plaintiffs.

95. As a direct and proximate result of the Defendants' conversion of the Plaintiffs' funds and assets, Plaintiffs have been damaged in amounts, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon.

96. As a direct and proximate result of Defendants' wrongful conduct, this Court should impose a constructive trust on each of the Defendants, pursuant to equity, requiring them to disgorge and make restitution to Plaintiffs for the wrongfully retained funds and assets, or any other benefit derived therefrom.

97. In performing the wrongful acts and omissions alleged above, each of the Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiffs' rights, reputations and business interests. By reason thereof, Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## EIGHTH CLAIM FOR RELIEF
### (Pled in the alternative, Unjust Enrichment)

98. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 97, inclusive, and incorporate the same as if fully set forth herein.

99. Defendants have been enriched by receiving the benefit of the Plaintiffs' assets, including but not limited to, their investment monies and any other funds or property which was transferred to the Defendants by Plaintiffs.

100. Defendants have not returned or otherwise delivered any consideration to the Plaintiffs in return for the Plaintiffs' assets which Defendants appreciated.

101. Defendants' retention of the Plaintiffs' assets, or any other benefit derived therefrom, would be inequitable under the circumstances.

102.     As a direct and proximate result of the Defendants' appreciation of the Plaintiffs' funds and assets, Plaintiffs have been damaged in amounts, the precise sums of which are presently unknown, but which will be determined in accordance with proof at trial, and which includes, at a minimum, the sum of $1,480,000, together with interest accruing thereon.

103.     As a direct and proximate result of Defendants' wrongful conduct, this Court should impose a constructive trust on each of the Defendants, pursuant to equity, requiring them to disgorge and make restitution to Plaintiffs for the wrongfully retained funds and assets, or any other benefit derived therefrom.

## NINTH CLAIM FOR RELIEF
### (Accounting)

104.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 103, inclusive, and incorporate the same as if fully set forth herein.

105.     By reason of Bergstrom's position as the Manager of Destination Online and President of OurID, and because Defendants each occupied positions of trust, responsibility and confidence arising therefrom, Defendants assumed and owed Plaintiffs all of the duties and obligations inherent in a fiduciary relationship.

106.     Defendants presently hold profits, proceeds, fruits and assets derived from Plaintiffs investments in Destination Online and OurID, all of which rightfully belong to Plaintiffs, as well as documentation pertaining to same.

107.     Plaintiffs are informed and believe that Defendants have received, and continue to receive, benefits and profits rightfully belonging to Plaintiffs which have been, and are, derived from their wrongful conduct, but Plaintiffs are presently unable to fully ascertain the extent of the same.

108.     Plaintiffs are entitled to and seek an accounting of all financial and operational affairs of Defendants, to enforce and otherwise protect their rights in such affairs.

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Nader Cheetany, Eva Garcia-Mendoza, Martyn Ravenhill, and Esad Morina pray for relief and the entry of judgment against Defendants, Peter Bergstrom, Destination Online L.L.C., and OURID, Inc., jointly and severally, as follows:

1.     For rescission of Plaintiffs' investments, including the Cheetany Adherence Agreement, Garcia Adherence Agreement, Ravenhill Adherence Agreement and Morina Adherence Agreement, and an order directing that Plaintiffs recover from Defendants jointly and severally the principal amount of Plaintiffs' investments, plus pre-judgment and post-judgment interest at the statutory rate, plus Plaintiffs' taxable costs and attorneys' fees

2.     For an award of compensatory damages in excess of $1,480,000.00;

3.     For an award of interest, attorneys' fees and all costs of suit pursuant to NRS 41.600(3)(c);

4.     For an award of statutory damages pursuant to NRS 598.0999(3);

5.     For an award of punitive damages;

6.     For an accounting of all financial and operational affairs of Destination Online and OurID;

7.     For the imposition of a constructive trust against Defendants for the benefit of the Plaintiffs; and

8.     For such other and further relief as the Court may deem just and appropriate under the circumstances.

Dated this 11th day of September, 2020.

SKLAR WILLIAMS PLLC

By:
Stephen R. Hackett, Esq. (NBN 5010)
Johnathon Fayeghi, Esq. (NBN 12736)
410 S. Rampart Blvd., Suite 350
Las Vegas, NV 89145
Tel:  (702) 360-6000
Fax: (702) 360-0000
*Attorneys for Plaintiffs*